NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                                                :
JOHNNY ROBINSON                                 :
                                                :
                Plaintiff,                      :
                                                :          Civil Action No. 07-3455 (JAG)
                v.                              :
                                                :              **OPINION**
COMMISSIONER OF SOCIAL                           :
SECURITY,                                       :
                                                :
                Defendant.                      :
_____:


**GREENAWAY, JR., U.S.D.J.**

Plaintiff, Johnny Robinson ("Plaintiff") seeks review of the Social Security

Commissioner's (the "Commissioner") decision denying his application for Disability Insurance

Benefits ("DIB")[1] for the period from July 1998 until the present, pursuant to 42 U.S.C. §405(g).[2]

Plaintiff asserts two separate grounds for overturning the Commissioner's decision. First,

Plaintiff argues that the Administrative Law Judge ("ALJ"), Richard L. De Steno ("ALJ De

Steno"), who presided over the administrative proceedings, was biased and, thus, denied Plaintiff

---

[1]  Disability Insurance Benefits are awarded only when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 20 C.F.R. §404.1520.

[2]  This section of the Social Security Act ( the "Act") provides that any individual who was a party to a hearing before the Secretary may commence a civil action within 60 days after the Secretary's final determination. The appropriate forum for this action is the district court of the United States judicial district in which Plaintiff resides.  42 U.S.C. §405(g).

his right to have the claim heard before an unbiased adjudicator.  Second, Plaintiff argues that the

Commissioner's decision was not supported by substantial evidence, as required by 42 U.S.C.

§ 405(g), and that the Commissioner erred in law and fact by denying the application.

For the reasons set forth in this Opinion, this Court finds that ALJ De Steno's actions in

these proceedings create the appearance of bias. As a result, this Court will vacate the

Commissioner's final decision denying disability benefits and will remand this case for a new

hearing, in accordance with this opinion.  The finding of the appearance of bias alleviates the

necessity to consider Plantiff's second claim.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.

1995) ("[W]e will consider claimant's bias claim, and, for reasons to be discussed, remand the

case for a new hearing.  In light of our decision to grant a new hearing, we need not address the

question of whether the Secretary's decision on the merits of the disability claim is supported by

substantial evidence in the record." (citing Hummel v. Heckler, 736 F.2d 91, 95 (3d Cir. 1984))).

**I.  Statement of Facts**

In October of 2002, plaintiff Johnny Robinson filed an application for Social Security

Income ("SSI") benefits, (Tr.[3] 69-89), alleging that he had been disabled since July 1998 due to

---

[3]  The Act instructs the Secretary to file, as part of the answer, a certified copy of the transcript of the record, including any evidence used to formulate the conclusion or decision. 42 U.S.C. § 405(g).  " Tr." refers to said transcript.

his HIV,[4] (Tr. 69, 131), Type II diabetes[5] and chronic hepatitis C.[6] (Tr. 130.) This initial

application was denied. (Tr. 48-51.) After granting Plaintiff's motion for reconsideration, the

Commissioner again denied the application. (Tr. 52-57.) Plaintiff then requested a hearing

before an ALJ to review the SSI benefits application. (Tr. 58.) This request was granted, and the

case was assigned to ALJ Richard L. De Steno, who scheduled the hearing for February 2004.

(Tr. 60-63.)

   After the hearing — held on February 10, 2004 — ALJ De Steno issued an unfavorable

decision. (Tr. 11-21.) Plaintiff requested Appeals Council review of this decision, claiming that

"the ALJ improperly applied the facts & law & did not give full and favorable consideration to

evidence favorable to the claimant." (Tr. 8-9.) This request was denied by the Appeals Council,

which stated that they "found no reason under [their] rules to review [ALJ De Steno's] decision."

(Tr. 3-5.)

   Plaintiff then brought an appeal before the District Court of New Jersey. (Tr. 202-05.)

Judge Faith S. Hochberg held that "it appear[ed] that the claimant has a non-exertional

limitation; and . . . it appear[ed] that the ALJ in the instant case failed to consider [testimony

---

   [4] HIV (Human Immunodeficiency Virus) is "a retrovirus that causes acquired
immunodeficiency syndrome (AIDS)." MOSBY'S MEDICAL, NURSING & ALLIED HEALTH
DICTIONARY 830 (6th ed. 2002) [hereinafter "MOSBY'S"].

   [5] Type II diabetes, otherwise known as "noninsulin-dependant diabetes mellitus," is "a
complex disorder of carbohydrates, fat, and protein metabolism that is primarily a result of a
deficiency or complete lack of insulin secretion by the beta cells of the pancreas or resistance to
insulin." MOSBY'S 511.

   [6] Heptatitis C is "a type of hepatitis transmitted most commonly by blood transfusion or
percutaneous inoculation, as when IV drug users share needles or when drug users share straws
for nasal inhalation of cocaine. The disease progresses to chronic hepatitis in up to 80% of the
patients acutely infected." MOSBY'S 805.

from a vocational expert regarding the non-exertional limitation]." (Tr. 202-03.)  As a result,

Judge Hochberg remanded the case to ALJ De Steno for reconsideration.  (Tr. 203.)

ALJ De Steno scheduled the second hearing for October 3, 2006.  (Tr. 240-82.)  At the

start of the hearing, Plaintiff's counsel requested that ALJ De Steno recuse himself from the case

due to bias.  (Tr. 243.)  This request was adamantly denied.  (Tr. 245.)

In addition to Plaintiff, (Tr. 252-60), ALJ De Steno heard testimony from Rocco J.

Meola, a vocational expert, (Tr. 260-69).  After asking Mr. Meola one hypothetical question, ALJ

De Steno allowed Plaintiff's counsel to question Mr. Meola before the closing statements.

(Tr. 262-64.)  At the conclusion of the hearing, Plaintiff's counsel restated his qualms on the

issue of bias, prompting, at times, an irate exchange with ALJ De Steno.  (Tr. 269-82.)

Following the hearing, ALJ De Steno issued an opinion,  (Tr. 192-201), in which he

noted that the District Court's "one limited reason for its remand," (Tr. 198), was the presence of

a non-exertional limitation.  (Id.)  From this language, ALJ De Steno inferred that the District

Court "was referring to [his] assessment that the claimant was restricted to performing simple

unskilled tasks."  (Id.)  ALJ De Steno then continued, noting that "[b]ased on the reference to a

singular non-exertional limitation and the absence of any reference by the Court to any other non-

exertional limitations, [he inferred] that the Court found no other non-exertional limitations."

(Id.)  "Nevertheless, to give the claimant the benefit of the doubt, [ALJ De Steno] included a

restriction from extensive contact with other individuals throughout the workday."  (Id.)  ALJ De

Steno then summarized Mr. Meola's testimony, devoting two-thirds of a paragraph to

summarizing his one hypothetical question and the remaining third to summarizing Mr. Meola's

answers to Plaintiff's counsel's questions.  (Tr. 199-200.)  The remainder of the opinion was

identical to ALJ De Steno's previous decision in this case.  Ultimately, ALJ De Steno concluded

that Plaintiff was not disabled, citing "Medical-Vocational Rule 202.17."  (Tr. 200.)

Plaintiff then sought Appeals Council review of the decision.  (Tr. 185-88.)  The Appeals

Council denied this request noting that they "found no reason under [their] rules to assume

jurisdiction."  (Tr. 182-84.)  This appeal followed.

## II.  Standard of Review

In United States courts, "[i]t is, of course, axiomatic that '[t]rial before 'an unbiased

judge' is essential to due process.'"  Hummel v. Heckler, 736 F.2d 91, 93 (3d Cir. 1984) (quoting

Johnson v. Mississippi, 403 U.S. 212, 216 (1971)).  "That due process rule is applicable to

administrative as well as judicial adjudications."  Id. (citing Gibson v. Berryhill, 411 U.S. 564,

579 (1973)).  However, "[t]he due process requirement of an impartial decisionmaker is applied

more strictly in administrative proceedings than in court proceedings because of the absence of

procedural safeguards normally available in judicial proceedings."  Ventura v. Shalala, 55 F.3d

900, 902 (3d Cir. 1995) (citing Hummel, 736 F.2d at 93).  This "right to an unbiased ALJ is

particularly important because of the active role played by ALJs in social security cases," id.,

particularly since "ALJs have a duty to develop a *full and fair* record in [such cases]."  Id.

(emphasis added).

Thus, even if "the record was totally devoid of [evidence supporting the finding of

disability], the bias of an [ALJ] might still be a ground for setting aside a determination adverse

to the claimant."  Hummel, 736 F.2d at 95.  Further, the Third Circuit has "repeatedly held that in

Social Security disability claim hearings the [ALJ] has an affirmative obligation to assist the

claimant in developing the facts."  Id. (citing Taybron v. Harris, 667 F.2d 412, 414-15 (3d Cir.

1981)).  It is therefore "difficult to conceive of how a judge biased against disability claims or

claimants could conscientiously perform that duty."  Id.  In fact, one court has observed that

"[o]nce we foresake [sic] fairness and due process because of the pressure of heavy caseloads,

then our system of justice will end. Although administrative hearings are not formal trials, nor

[sic] should they be so informal or limited that their fairness is destroyed."  Rosa v. Bowen, 677

F. Supp. 782, 785 (D.N.J. 1988).

Recognizing this, the Secretary of Health, Education and Welfare enacted regulations

specifically establishing both the standard of review and the procedure for addressing the issue of

ALJ bias.[7]  As a result, "the claimant must bring any objections to the attention of the ALJ, and

the ALJ shall decide whether to continue the hearing or withdraw."  Ventura, 55 F.3d at 902

(citing 20 C.F.R. §§ 404.940, 416.1440 (1994)).  "If the ALJ does not withdraw, the claimant

may present objections to the Appeals Council as reasons why the hearing decision should be

revised or a new hearing held before another ALJ."  Id.  Further "judicial review of bias claims

---

[7] Title 20 of the Code of Federal Regulations contains two separate yet identical sections
that address the issue of ALJ bias. Those sections provide:

> An administrative law judge shall not conduct a hearing if he or she is prejudiced
> or partial with respect to any party or has any interest in the matter pending for
> decision. If you object to the administrative law judge who will conduct the
> hearing, you must notify the administrative law judge at your earliest opportunity.
> The administrative law judge shall consider your objections and shall decide
> whether to proceed with the hearing or withdraw. If he or she withdraws, the
> Associate Commissioner for Hearings and Appeals, or his or her delegate, will
> appoint another administrative law judge to conduct the hearing. If the
> administrative law judge does not withdraw, you may, after the hearing, present
> your objections to the Appeals Council as reasons why the hearing decision
> should be revised or a new hearing held before another administrative law judge.

20 C.F.R. §§ 404.940, 416.1440 (2008).

takes place in review proceedings under [42 U.S.C. § 405(g)(2000)]." Hummel, 736 F.2d at 94.

Generally, a district court has "no factfinding role in Social Security review cases." Id. at 93 (citing 42 U.S.C. § 405(g) (2008)). Nevertheless, a district court "may at any time order additional evidence to be taken before the Secretary, but only upon showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (2008). In the context of evaluating an ALJ's potential bias, a court evaluates the "conduct of the [ALJ at the] hearing, not the content of the evidence." Id. at 901. Thus, "the taking of new evidence is not necessary in [a case where] the ALJ's conduct at the hearing can be evaluated using the hearing transcript." Id. at 904.

Ultimately, the purpose of such an analysis, according to the Third Circuit, is to "protect the public's confidence in the judiciary." In re Antar, 71 F.3d 97, 101 (3d Cir. 1995). Thus, a court must focus its "inquiry . . . not on whether the judge actually harbored subjective bias, but rather on whether the record, viewed objectively, reasonably supports the appearance of prejudice or bias." Id. at 101. Since such standards apply "more strictly in administrative proceedings," Ventura, 55 F.3d at 902, a reviewing court must look for the appearance of bias in the case of an ALJ as well.

### III. Analysis

In the instant case, an inspection of the record reveals several instances in which ALJ De Steno's conduct and discourse raise the specter of possible bias. In particular, during the hearing the ALJ appeared to hold a marked disdain for the remand process, a perception borne out by an exchange that the ALJ had with Plaintiff's counsel toward the end of the hearing:

> ATTY: There's one partially favorable [decision] that you rendered [on remand], sir.
> ALJ: No, wrong. There are several fully favorable.
> ATTY: Well, I know you must, they must be dear to your heart because there's not that many of them so I would assume that, and again, I'm not being facetious.
> ALJ: And I don't think you are. I don't think, I don't think t's [sic], it's logical to expect that there's going to be a great number of remands that suddenly go from unfavorable to favorable with any Judge.
> ATTY: Well, see that's, that's --
> ALJ: Because I get those remands from other Judges and I see that they do. I see that they, they frequently, if not almost, most of the time, issue unfavorables the second time around because I get them too. I get them on another remand.

(Tr. 277-78.)  This exchange exemplifies the observation of the Third Circuit that it is "difficult to conceive how a judge, biased against disability claims or claimants could conscientiously perform that duty." Hummel v. Heckler, 736 F.2d 91, 95 (3d Cir. 1984).

In this Court's opinion, it is no less difficult to conceive how a judge who is biased against disability claims on remand could "conscientiously perform" the duty of giving a plaintiff a full and fair rehearing.  Additionally, the October 2006 hearing transcript is replete with instances where ALJ De Steno exhibited exasperation and, at times, outright hostility, toward Plaintiff's counsel.

The first such instance occurred early in the hearing, after Plaintiff's counsel finished making his motion for ALJ De Steno to recuse himself, but before the ALJ ruled on the motion.

> ATTY: . . . So based on the due process we'd also ask you to recuse yourself.
> ALJ: Okay. We'll go through it again. As you know, this motion has been made dozens of times. It's been made in virtually every remand case before me by you, a couple times by your partner. It's the same or similar every time. My response is similar. I'll repeat it since it's been made here.

(Tr. 245.)  Later in the hearing, ALJ De Steno once again displayed enmity toward Plaintiff's counsel after the latter correctly noted that ALJ De Steno had asked the District Court mandated vocational expert, Mr. Meola, only one hypothetical question:

ALJ: Questions, Mr. Langton?
ATTY: Is that all the questions you have, Judge?
ALJ: I'm done. Your turn.
ATTY: You're not going to do a full range here of what the evidence shows in [Plaintiff's] file?
ALJ: Do you have any questions?
ATTY: I certainly have questions, Judge.
ALJ: Okay, go ahead.
ATTY: I'm just asking. I just wanted to make it clear for the record that Your, Your Honor asked one hypothetical question.
ALJ: Anyone reading the record could tell that, right?
ATTY: I would hope so.
ALJ: It doesn't take rocket science to tell that.
ATTY: It certainly doesn't, but I thought the idea was the Court was responsible for giving a full range of what the record shows could be somebody's–
ALJ: The [District] Court specified no non-exertional limitations which is puzzling and unhelpful.
ATTY: I'm sorry, sir. I, I missed that.

(Tr. 262-63.)  Since a "full and fair record" is an essential component of due process, Ventura, 55 F.3d at 902, ALJ De Steno's apparent disregard for the paucity of the record in this case is troubling, as it raises the possibility, to say nothing of the appearance, of denying Plaintiff due process protection.  The snide and hostile nature of the ALJ's remarks concerns this Court, particularly given that the ALJ and Plaintiff's counsel were arguing over how full a "full and fair" record ought to be.

Toward the end of the hearing, after Plaintiff's counsel began his closing statement, ALJ De Steno interjected with a question about the substance of the closing argument, leading to a prolonged exchange between the ALJ and Plaintiff's counsel:

ALJ: You're not going to repeat your motion again, are you?
ATTY: No, I'm certainly going to repeat it, Judge.
ALJ: Okay.
ATTY: You made your ruling on that and we'll, we'll deal with that on –
ALJ: Because it sounds very similar.
ATTY: I assume on appeal. No, but it's an example. It's an example of someone

9

who made, made the call. And we're not getting a new and fair hearing here.

ALJ: I think, you know what? I think you should take all these arguments to the, to the appropriate component of the Agency. Tell them how, what your theory is. Bring out all your cases and all your, your support and make a motion that DeSteno shouldn't hear any of your remands. . . . I don't think that's going to ever happen, but I think rather than repeating your motion to me every time, I've already made it clear it's not a valid motion. It's always the same motion. I don't really see what's to be gained by doing it every single time over and over. You say your thing. I say my thing. You make statements that I don't think are accurate. I tell you I don't think they're accurate. You repeat them again the next time. You give the same basis for your argument. It's, it's . . . almost the same every time and my answer is the same because that's what the factual part of it is from my standpoint. So I don't really follow why we do this every time.

ATTY: It's called making a record, Judge.

ALJ: I understand that. But why don't you just either file something in writing or make or, or resolve the issue once and for all by going to the Agency and, and having, and asking them to make it, an order that either resolves it or doesn't resolve it. I don't, I don't get the point of doing this every single time. And, you know, I don't know. I guess if you want to do it, you do it. But, to me it's, it's a colossal waste of time every single hearing to go, to waste a half hour on this motion when you, you know what you're going to say. I know what you're going to say. You know what I'm going to say. And you want to make a record? Why don't you prepare a, a page or two of a motion, submit it every time and I'll, I'll answer it in my, either at the hearing or in my decision and we'll save a lot of time or go to the Agency and try to get them to rule on it. That's, that's, that's what I would suggest.

(Tr. 271-73.)  What is most striking about ALJ De Steno's comments is his disapproval of the

motion for recusal, in general.  The ALJ noted that not only was he never going to recuse, but he

also believed that making the motion in open court was "a colossal waste of time." (Id.)  This

implies that the ALJ came into this hearing with his mind set firmly against his own recusal.

Thus, there was no opportunity for Plaintiff's counsel to present his arguments to an impartial

judicial officer, nor was Plaintiff's counsel given the opportunity to attempt to persuade the ALJ

to change his mind.  Consequently, even the illusion of due process did not exist.

After some further banter, ALJ De Steno once again pressed Plaintiff's counsel about the

necessity of making a motion for recusal:

> ALJ: So we're going to go through this every time you're saying?
> ATTY: No. I'm not saying that, Judge. What I was talking about –
> ALJ: Is, is it, is it, is it going to have some, is there going to be some point when, when this, we save this time or is this going to happen every hearing, every remand hearing?
> ATTY: I mean, I, I have to make a record, Judge. And what I was referring –
> ALJ: Well, I just said –
> ATTY: To at the end, what I was, what I was –
> ALJ: Why don't you, why –
> ATTY: I wasn't repeating my motion. You're talking about the motion. I'm talking about my closing statement was with regard to your prior decision.
> ALJ: Well, now I'm interested in the motion.
> ATTY: Okay.
> ALJ: So, why, why not prepare, have somebody prepare a, a document and just submit the same document every time?
> ATTY I'll consider it, sir.
> ALJ: Okay, good. I hope you do it because that'll save everybody a lot of time.

(Tr. 274-75.)  Thus, just as in the previous example, ALJ De Steno again created the impression of bias.  Once again, the ALJ articulated his apparent distaste for the recusal motion, even showing a marked lack of patience with Plaintiff's counsel and going so far as to, at one point, refocus the conversation back on the recusal motion so that he could continue to comment on its superfluousness.

The disagreement then spread to include not only the motion for ALJ De Steno to recuse himself in this case, but also ALJ De Steno's handling of remand cases in general:

> ATTY: [The District Court] basically said [Plaintiff] . . . was anti-social as you said in your last, you said in your last decision itself. You threw the evidence out but at least you quoted it correctly. I mean, here now, anti-social has gone to let's not have an extensive contact with somebody. I mean, that's the extent of your non-exertional.
> ALJ: It's a reasonable, it's a reasonable interpretation –
> ATTY: Well, I, I, I assume it was.
> ALJ: Eminently reasonable interpretation.
> ATTY: Well, thank God.

> ALJ: Having been given no specifics to go by, I must use my own interpretation
> and it's reasonable.
> ATTY: Well, if this is –
> ALJ: As far as no, not according due process that's, that's utter and complete
> nonsense from my standpoint. You can make those charges all you want, but it's
> utter and complete nonsense.
> ATTY: We certainly make them to the District Courts, Judge, and we wait for
> their, we wait for their decisions –
> ALJ: Good, bring it on, bring it on.

(Tr. 275-76.)  To say that ALJ De Steno's comments during this portion of the hearing are

disquieting would be an understatement.  The blatant antagonism displayed by the ALJ during

this exchange, not to mention the combative challenge issued to Plaintiff's counsel at the end,

absolutely speak to a possible bias against Plaintiff's counsel on the ALJ's part.

Finally, ALJ De Steno noted that Plaintiff's counsel was the only attorney to argue for

recusal:

> ALJ: I never heard this [argument] from anybody else, by the way.
> ATTY: Well, I can't help what other, what other attorneys do, Judge. But what
> I'm --
> ALJ: I never heard, I never heard anything like this from any source but you.

(Tr. 278.)  A unique argument on the part of counsel is not, in and of itself, a cause for concern.

The current situation, however, is different.  Plaintiff's counsel is not simply the only attorney to

argue for ALJ De Steno's recusal in remand cases; rather, Plaintiff's counsel is the only attorney

to make an argument which, in the eyes of the ALJ, is "a colossal waste of time." (Tr. 273.)

Thus, given all the statements that preceded it, the ALJ's comment that Plaintiff's counsel is

alone in arguing for recusal brings with it the onus of prejudice.

While some of the above-mentioned comments, by themselves, may not be enough to

arouse the perception of bias on the part of ALJ De Steno, the District Court of New Jersey has

held that "[e]ven where no one error, standing alone, would suffice to set aside an administrator's determination, a large number of errors can have the combined effect of rendering a hearing unfair and inadequate." Rosa, 677 F. Supp. at 785 (citing Hankerson v. Harris, 636 F.2d 893, 897 (2d Cir. 1980)).

This Court concludes that, taken in the aggregate, the comments made by ALJ De Steno about Plaintiff's counsel, as well as the ALJ's remarks regarding the remand process in general, are enough to satisfy the requirement for finding the appearance of bias in this case. Not only was the ALJ overtly hostile toward Plaintiff's counsel, but his comments bespeak contempt toward the remand process as a whole, as well as toward the recusal motion, which is unique to Plaintiff's counsel. ALJ De Steno's conduct and commentary in this case also raise the possibility of denying Plaintiff a full and fair hearing before an impartial jurist, thus depriving him of the requisite due process protection.

**IV. Conclusion**

ALJ De Steno's comments during the October 2006 hearing succeed in raising the perception of bias on his part. This Court will vacate the Commissioner's decision and remand Plaintiff's case for a full and fair de novo hearing before a different Administrative Law Judge.

Date: March 30, 2009

                                                      S/Joseph A. Greenaway, Jr.
                                                      JOSEPH A. GREENAWAY, JR., U.S.D.J.